Enter - send

FILED
CLERK, U.S. DISTRICT COURT
AUG 31 1999
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
SEP -1 1999
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN L. BAUER AND LINDA M. BAUER,<br>Plaintiffs,<br>v.<br>ABTECH INDUSTRIES, et al.,<br>Defendants. | Case No. CV 99-8121 CM (RCx)<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 AND THE COURT'S INHERENT AUTHORITY |

I.

INTRODUCTION

Presently before the Court is a motion for sanctions filed by Plaintiffs Warren L. Bauer and Linda M. Bauer ("Plaintiffs" or the "Bauers") against Defendants AbTech Industries, Inc. and AbTech Industries, LLC ("AbTech") and Coppersmith & Gordon, attorneys of record, under Federal Rule of Civil Procedure 11 and under the Court's inherent authority.

Upon full consideration of the parties' papers, applicable authorities, and the entire file related to this case, the Court hereby denies the Bauers' motion for sanctions.

DOCKETED
COPY PTYS
JS-6

SEP 01 1999

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 2, 1998, Plaintiffs filed a complaint in federal court, Case No. SAC 98-203 LHM (Eex), against Defendants AbTech, Glenn R. Rink, Peter Allen, Peter Deane, Todd Jorn and Kevin Warner for fraud, negligent misrepresentation, breach of contract, appointment of receiver, and conspiracy. Plaintiffs alleged that Warren L. Bauer ("Mr. Bauer") invested $525,000.00 of his retirement funds in AbTech based upon misrepresentations.

Finding Plaintiffs' claims arbitrable under the operating agreement, Judge H. McLaughlin dismissed the action without prejudice. The order was issued before any of the Defendants had been properly served with a copy of the summons and complaint. Judge McLaughlin's order, dated March 10, 1998, provides in part:

> Plaintiffs Warren and Linda Bauer ("Bauer") filed their complaint on 3/2/98.
>
> Bauer alleges five causes of action: (1) fraud; (2) negligent misrepresentation; (3) breach of contract; (4) appointment of receiver; and (5) conspiracy.
>
> BAUER executed a Subscription Agreement ("Subscription Agreement" according to which he purchased six units of Abtech. The Subscription Agreement also made Bauer a member of Abtech whose rights and privilege were governed by the Amended Operating Agreement ("Operating Agreement").
>
> \* \* \* \*
>
> <u>Arbitration Clause.</u> The Operating Agreement contains an arbitration clause at Article XI which provides that "<u>[i]f any Member disputes any matter under this Agreement</u>, if the Company wishes to obtain an interpretation of any portion of this Agreement or its application to a Member ("Claim"), such Claim shall be resolved by arbitration under the

> following procedure . . ." [] Each of Bauer's causes of action is a matter arising under the Operating Agreement and, as such, is subject to that agreement's arbitration clause.
>
> \* \* \* \*
>
> Because Bauer's claims are matters arising under the Original Agreement, the appropriate forum to redress those claims is arbitration, not federal court. Accordingly, the Complaint is dismissed without prejudice and referred to an arbitrator for resolution pursuant to the provisions of the Original Agreement.

On April 6, 1998, Plaintiffs served AbTech with a Demand for Arbitration. The parties subsequently agreed to arbitrate and, as such, selected H. Lee Sarokin ("Sarokin") and Bruce Meyerson ("Meyerson") as two of the three neutral arbitrators on the panel. AbTech paid Meyerson's fees on a retainer basis, and the Bauers pre-paid Sarokin's fees. William J. Maledon ("Maledon") was then selected as the third neutral arbitrator by both Meyerson and Sarokin as provided under the agreement. On July 13, 1998, Maledon confirmed that he was available during the dates that had been scheduled.

On August 7, 1998, AbTech served the Bauers with a motion to terminate arbitration proceedings and response to demand for arbitration. Defendants contended that Plaintiffs' claims for fraud and negligent misrepresentation were not covered under the agreement. AbTech further asserted that none of the Defendants were subject to the agreement. The arbitration panel denied AbTech's motion on August 24, 1998.

An arbitration hearing was subsequently scheduled for December 8 through December 11, 1998. The parties were advised that any cancellation and/or rescheduling was required in writing twenty-one days prior to the commencement of the arbitration

1 proceeding.

2 On October 29, 1998, AbTech's counsel, Andrew Gordon ("Gordon"), sent a letter to Plaintiff's counsel, Gerald Shaw ("Shaw"), in which he was notified that a potential conflict existed with Maledon. Apparently, an associate who had worked with AbTech was married to an attorney associated with Osborn Maledon, a law firm in which Maledon was a partner. Maledon subsequently disqualified himself from the arbitration panel on November 16, 1998.

Alternative Dispute Resolution Center ("ADR") subsequently recommended William Burby ("Burby"), a retired Los Angeles Superior Court, as Maledon's replacement. Gordon objected to Burby, a California resident, on the grounds that "it ma[de] little sense . . . to have two California arbitrators come to Arizona at significant expense to decide issues of Arizona law." Exhibit B to Declaration of Bruce E. Meyerson.

On or about November 24, 1998, Gordon requested a continuance of the arbitration based on its contention that it could not "both defend [the] arbitration and focus on developing the additional financing that the company need[ed] to survive." On November 25, 199, Meyerson, Sarokin and the parties' counsel had a conference call to discuss the matter. Sarokin and Meyerson denied AbTech's request subject to the following:

    1.    Judge Burby ha[d] agreed to serve as an arbitrator in this matter and is available on the dates set aside for arbitration; and

    2.    [Plaintiffs had agreed] to pay the travel and lodging expenses associated with Judge Burby's travel and accommodations in Phoenix; or

    3.    Another mutually agreeable arbitrator (perhaps Mr.

1   Allen) [was] available to serve.
2  Exhibit C to Meyerson Declaration ("Meyerson Decl."). Gordon and
3  Shaw were further advised that they should inform the arbitrators
4  as to whether Judge Burby or Judge Allen would be selected as the
5  third arbitrator.
6      On November 29, 1998, Gordon sent a letter to Meyerson,
7  Sarokin, Burby, Shaw, and Lucie Barron, Director of ADR, in which
8  he noted that it was not his understanding that Burby had been
9  selected as the third neutral arbitrator and that AbTech was not
10 prepared to pay for Burby's services. He also objected to the
11 pre-payment of Burby's fees by Plaintiffs "because that [would
12 have], in effect, [made] Judge Burby, Mr. Bauer's arbitrator at
13 which point Mr. Bauer [would] have selected two of the three
14 arbitrators in direct violation of the Arbitration Agreement."
15 Exhibit E to Meyerson Decl. On December 1, 1998, during another
16 conference call between the parties, Sarokin suggested that any
17 potential bias could be cured by AbTech's prepayment of the other
18 one-half of Burby's fees.
19     On November 2, 1998 and in response to Gordon's November 29,
20 1998 letter, Meyerson and Sarokin issued an Order RE Appointment
21 of and Payment to Third Arbitrator. The order provided in part:

> Although respondents did express objection to the selection of a third arbitrator from California, subsequently counsel for respondents agreed and withdrew any objection to Judge William E. Burby on the condition that the additional expenses incident to Judge Burby's travel and lodging would be borne by the claimants. (There was no agreement that the claimants would pay respondents' share of Judge Burby's fees. Thus, the contention that claimants have selected or are paying for two the arbitrators is incorrect. Furthermore, it is understood that all arbitrators are serving as neutrals.) Claimants' counsel agreed in order to avoid any adjournment of the scheduled hearing.

5

Exhibit K to Gordon Decl.

On December 3, 1998, Gordon counsel sent a letter to Plaintiffs in which AbTech's concerns regarding the selection of Burby were raised once again. The letter states in relevant part:

> You are [] correct that Mr. Bauer's advancing the costs for Judge Burby (or any other third arbitrator), would create the spectrum of bias and prejudice, an issue we will raise with the arbitrators and, if necessary, in any subsequent proceedings.
>
> As I have previously advised you, if Mr. Bauer wishes to cancel the arbitration and proceed in federal court, he may do so and we will not seek to have the lawsuit or any portion of that lawsuit dismissed on the basis that it was subject to the limited arbitration provision contained within the Operating Agreement.

Exhibit J. to Declaration of Andrew S. Gordon ("Gordon Decl."). On December 7, 1998, the parties entered into a stipulation waiving the arbitration provisions contained in the operating agreement. AbTech explicitly reserved their right to certain defenses, including lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue. See Stipulation and Order Waiving Arbitration Provisions. Presumably in anticipation of the stipulation agreement, Plaintiffs had already filed a complaint with a new complaint number, Case No. 99-2393 CM (RCS), on December 3, 1998.

On December 14, 1998, Judge McLaughlin issued an Order to Show Cause ("OSC") why the matter should not be referred to arbitration. Plaintiffs and Defendants filed their response to the OSC on December 16 and 24, 1998, respectively. On December 29, 1998, Judge McLuaghlin struck Defendants' papers based on her March 10, 1998 order dismissing the complaint without prejudice.

Plaintiffs subsequently filed a motion for sanctions on January 28, 1999 in the originally filed action, Case No. SACV 98-203 LHM (Eex), which had already been dismissed by Judge McLaughlin.[1]

## III.

## DISCUSSION

As a preliminary issue, the Court has serious doubts as to whether it has jurisdiction to rule on Plaintiff's motion for sanctions. As indicated above, the action had been dismissed without prejudice by Judge McLaughlin in March 1998. Even if it were proper for this Court to exercise jurisdiction, Plaintiffs, nevertheless, would not be entitled to sanctions.

Plaintiffs move the Court for sanctions under Federal Rule 11 and under its inherent power based on the following allegations:

> 4. After the BAUERS initially filed this action in this Court, and after the Honorable Linda H. McLaughlin, U.S. District Judge, dismissed the action, without prejudice, on the basis that she concluded it was subject to contractual arbitration, ABTECH and GORDON, led the BAUERS and their counsel, Gerald M. Shaw ("SHAW") to believe that they fully acquiesced with Judge McLaughlin's Order, and would willingly proceed with the Court-ordered arbitration;
>
> 5. On the basis of ABTECHS' AND GORDON's conduct and apparent acquiescence with the Court-order arbitration, the BAUERS and their counsel, SHAW, expended their time and money in working with GORDON to select three neutral arbitrators through Alternative Dispute Resolution Center ("ADR");
>
> 3. As part of the pre-arbitration process, the BAUERS paid

---

[1] Upon transfer of the originally filed complaint to this Court, it was assigned the new case number CV 99-8121 CM (RCx).

7

        ADR the sum of $22,300.00 for the services of H. Lee Sarokin, and an additional $4,800, which was pre-payment of one-half of the fees of William Burby ("BURBY"), another of the neutral arbitrators, as was requested by ADR as a prerequisite for ADR to conduct the arbitration;

4. That on November 29, 1998, within days of the scheduled arbitration hearing, GORDON advised the BAUERS and SHAW, that ABTECH would not proceed with the arbitration on the basis of the BAUERS' prepayment of one-half of BURBY'S FEES, which ABTECH contended had in some way tainted or biased him against ABTECH;

5. The ABTECH and GORDON refused to remit the remaining one-half of BURBY's fees prior to arbitration, which would have cured the alleged biases, ABTECH and GORDON claimed to have been created by the BAUERS's pre-payment of one-half of his fees;

6. That as a result of ABTECH and GORDON's actions in terminating the arbitration process, this action is now back in Federal Court, where it was initially filed, and ordered to arbitration, which will cause the BAUERS to incur further costs and fees, and which will significantly delay the resolution of their claim against ABTECH.

7. As a result of ABTECH and GORDON's actions in breaching the arbitration provisions of the agreement, after leading the BAUERS to believe that their claim would be arbitrated, the BAUERS incurred and paid $58,181.15 in attorneys' fees and costs; $13,800 in non-refundable arbitration fees, and $2,500 in travel and lodging expenses to appear in Arizona for depositions, arbitration conference meetings, and a hearing in the Arizona Superior Court, where ABTECH requested an Order staying the arbitration hearing.

    Rule 11 requires a court to determine "whether [an] attorney has abused the judicial process, and, if so, what sanction should be appropriate." <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456. However, Plaintiffs fail to recognize that "Rule 11 imposes a duty on [an] attorney[] to certify that all pleadings are legally tenable and well-grounded in fact; it governs <u>only</u> papers filed with the court." <u>Primus Automotive Financial Services, Inc. v. Batarse</u>, 115 F.3d 644, 648 (9th Cir.

1  1997)(emphasis added), citing Fed.R.Civ.P. 11; Chambers v. Nasco,
2  Inc., 501 U.S. 32, 41, 111 S.Ct. 2123, 2130-31, 115 L.Ed.2d 27
3  (1991). Because allegedly wrongful conduct is not related to any
4  pleadings they have submitted, the Court finds that awarding
5  sanctions against AbTech and its attorneys under Rule 11 is
6  improper.

7      The Court, however, is not precluded from sanctioning a
8  party under its inherent authority "'to "protect[] the due and
9  orderly administration of justice" and "maintain[] the authority
10 and dignity of the court."'" Id., quoting Cook v. United States,
11 267 U.S. 517, 539, 45 S.Ct. 390, 395-96, 69 L.Ed. 767 (1925). A
12 "court must make an explicit finding that counsel's conduct
13 constituted or was tantamount to bad faith," Batarse, 115 F.3d at
14 648 (internal quotation and citation omitted), before sanctions
15 may be awarded.

16     Upon review of the submitted record, the Court finds that
17 AbTech's or its counsel's conduct did not rise to the level of
18 bad faith. It is undisputed that AbTech: 1) agreed to arbitrate
19 the matter commencing December 8, 1999; 2) requested that the
20 scheduled arbitration proceedings be postponed because of its
21 alleged financial hardship; 3) objected to the selection of Burby
22 as costly; and 4) finally disingenuously quibbled that
23 Plaintiff's pre-payment of Burby's service fees and incidental
24 travel costs would taint the proceedings with a specter of bias.
25 The record, however, does not support the Bauers' assertion that
26 AbTech refused to go forward with the arbitration proceeding.
27     Gordon's December 3, 1998, letter in which he informed Shaw
28 that he intended to raise its arguably artificial objections with

the arbitration panel or in some subsequent proceeding, cannot be characterized as a refusal to arbitrate. Shaw, confronted with Gordon's objections, decided it was in his clients best interest to waive the applicable arbitration provision in the governing agreement and proceed in federal court. Ultimately, it was Plaintiffs' decision, not AbTech's, to proceed with the matter in federal court.

The Court recognizes that Gordon's tactics may have pressured Plaintiffs to enter into a stipulation to waive their right to arbitrate their claims. Gordon's zealous representation of his clients, albeit far from exemplary, cannot be characterized as sanctionable behavior, especially when the record does not indicate, as Plaintiffs argue, that AbTech, at the final hour, refused to proceed with the arbitration on December 8, 1999.

## IV.

## CONCLUSION

For the reasons set forth above, the Court hereby <u>denies</u> Plaintiff's motion for sanctions under Federal Rule of Civil Procedure 11 and under the Court's inherent authority.

IT IS SO ORDERED.

DATED: August 31, 1999

_____
Carlos R. Moreno
United States District Judge